IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERNA BRAMBERGER, Personal
Representative of the Estate of
Johann Bramberger, Deceased,

       Plaintiff,      Case No. 3:10 CV 1626

 -vs-

                  MEMORANDUM OPINION

TOLEDO HOSPITAL, et al.,

       Defendant.

KATZ, J.

   Plaintiff Erna Bramberger ("Plaintiff"), as personal representative of the estate of the deceased Johann Bramberger ("Mr. Bramberger"), brings this medical malpractice and wrongful death action pursuant to the Federal Tort Claims Act ("FTCA") and state law. Plaintiff seeks damages for Defendants' alleged failure to diagnose Mr. Bramberger's fatal lung cancer until five years after a chest x-ray revealed a nodule in his left lung. The matter is currently before the Court on Defendant United States' ("the government") FED. R. CIV. P. 12(b)(1) and 12(b)(6) motion to dismiss, as well on as the government's FED. R. CIV. P. 56(c) motion for summary judgment. Also pending are FED. R. CIV. P. 12(b)(6) motions to dismiss, or alternatively, FED. R. CIV. P. 56(c) motions for summary judgment filed by Defendants Toledo Hospital, Northwest Ohio Cardiology Consultants ("NWOCC"), and NWOCC physician Dr. Jeffrey McClure.

   For the reasons stated herein, the government's motion to dismiss is granted and its motion for summary judgment is denied as moot. Toledo Hospital, NWOCC, and Dr. McClure's motions to dismiss and motions for summary judgment are denied.

**I. Background**

On January 14, 2002, Mr. Bramberger was seen by Dr. Mark Koehl at the Family Medical Center ("Medical Center") in Temperance, Michigan. Importantly, the Medical Center is deemed a federal entity and Dr. Koehl is deemed a federal employee as to all pertinent dates. Thus, while Plaintiff originally named Dr. Koehl and the Medical Center as Defendants, the United States substituted itself as a Defendant in place of the Medical Center and Dr. Koehl.

During Mr. Bramberger's January 14 visit, Dr. Koehl ordered a chest x-ray, which was taken at the Medical Center the same day. Also that day, Dr. Koehl interpreted the x-ray as showing fluid in Mr. Bramberger's lungs, and therefore diagnosed Mr. Bramberger with congestive heart failure. Dr. Koehl then admitted Mr. Bramberger to Toledo Hospital in Ohio that day, and personally called Toledo Hospital from his office in Temperance to issue admission orders and to order that another chest x-ray be taken upon Mr. Bramberger's admission. The parties do not dispute that the x-ray taken at the Medical Center does not show a nodule in Mr. Bramberger's lung.[1]

Per Dr. Koehl's orders, Mr. Bramberger was admitted to Toledo Hospital on January 14, and a chest x-ray was taken at the hospital the same day. Also that day, Radiologist Dr. Robert Disalle reviewed the x-ray and found a small nodule in Mr. Bramberger's left lung. While the transcribed x-ray results were not verified by Dr. Disalle until two days later, Doc. 59-2 at 5, Dr. Disalle made a handwritten note on January 14 indicating that he found a nodule and that he recommended a CT scan. Also on January 14, one of the radiology department's clerical workers, Ramona Wilkerson, telephoned the nurse on Mr. Bramberger's hospital floor to report the x-ray

---

[1] The Medical Center x-ray was also sent to Consulting Radiologists, Inc. for evaluation. Consulting Radiologist Inc.'s report indicated that the examination was somewhat compromised due to under-penetrated films. Dr. Koehl did not review this radiology report until January 17.

2

results. Doc. 74-1. Wilkerson does not recall precisely what information she relayed, but stated at deposition that such calls are common, and that "I probably would have said, 'I'm calling with the results of Johann Bramberger's chest x-rays, and it says 'CHF with small bilateral pleural effusion, small nodule. Recommend CT chest follow up.''" Doc. 78 at 13:17-14:6. Wilkerson does not recall whether she also faxed the information to the nurse. Doc. 78 at 14:17-20.

On January 16, Dr. Koehl visited Mr. Bramberger at Toledo Hospital. Dr. Koehl stated at deposition, however, that he does not recall Dr. DiSalle's report of a nodule and recommendation for a CT scan as having been in Mr. Bramberger's chart. Dep. Dr. Koehl, Doc. 77 at 89:3-7 (hereinafter, "Koehl Dep."). Dr. Koehl does not remember looking at the chart and saying "where is my chest x-ray report that I ordered," *id*. at 34:24-36:3, 89:12-15, but at deposition Dr. Koehl was sure the report was absent because if he saw the recommendation, he would have ordered a CT scan at that time. *Id*. at 89:8-14. Dr. Koehl also stated that he would have expected the x-ray to be completed by his January 16 hospital visit, but could not recall whether he inquired as to the results. *Id*. at 89:20-24.[2] Nevertheless, Dr. Koehl assessed Mr. Bramberger, and based on the fact that Mr. Bramberger's lungs "sounded much clearer," Dr. Koehl wrote "[c]ongestive heart failure

---

[2] Plaintiff does not dispute for purposes of the instant motion practice that Dr. DiSalle's report of a nodule and recommendation for a CT scan was absent from Mr. Bramberger's chart at the time of Dr. Koehl's January 16 visit.
   Defendant Toledo Hospital seems to suggest in passing that Dr. Disalle's recommendation may have been in Mr. Bramberger's chart, pointing to deposition testimony from the hospital's radiology transcription aid that the aid "took [Dr. DiSalle's] verified report to the floor where Mr. Bramberger was assigned that morning, and placed the report either 1) in [Mr. Bramberger's] chart, or 2) given [sic] it to the floor clerk to place in the 'file box.'" Doc. 73 at 8. At the beginning of its brief, however, Toledo Hospital expressly adopts and incorporates as undisputed its co-defendants' factual statements, *id*. at 2, which include the government's pivotal assertion that Dr. DiSalle's recommendation was absent from Mr. Bramberger's chart at the time of Dr. Koehl's visit.

improved " on Mr. Bramberger's chart. *Id*. at 88:22-89:2. Mr. Bramberger was discharged from Toledo hospital the next day on January 17, 2002. Dr. DiSalle's recommended CT scan was never completed.[3]

In February 2007–five years after Dr. DiSalle's radiology report indicated a nodule and recommended a CT scan–Mr. Bramberger was diagnosed with lung cancer. He was also informed at that time of a medical record indicating that he should have been aware of the cancer in 2002. Pltf. Dep., Doc. 59-3 at 67:9-71:2 (hereinafter, "Pltf. Dep."). Mr. Bramberger died of lung cancer in Michigan on May 3, 2008.

On April 30, 2010, Plaintiff filed suit in Ohio's Lucas County Court of Common Pleas, naming Dr. Koehl, the Medical Center, Toledo Hospital, NWOCC, and Dr. McClure as Defendants. The government, pursuant to the FTCA, removed the case to this Court and filed a Notice of Substitution of itself in place of Dr. Koehl and the Medical Center. Doc. 2. This Court then dismissed the government as a Defendant due to the FTCA's requirement that Plaintiff file an administrative claim prior to suing the government in tort. *See* 28 U.S.C. § 2401(b); Doc. 28. Thereafter, Plaintiff filed the administrative claim, and upon expiration of the government's allotted time for response, Plaintiff filed an amended complaint alleging a FTCA claim against the government. Doc. 52. The claims against Toledo Hospital, NWOCC, and Dr. McClure remained

---

[3] During Mr. Bramberger's hospital stay, Dr. Koehl requested a cardiology consultation from Defendant NWOCC, which was completed by Defendant NWOCC physician Dr. Jeffery McClure. Plaintiff alleges NWOCC and Dr. McClure were negligent for not following-up on the Toledo Hospital x-ray results, while NWOCC and Dr. McClure maintain that such follow-up was unnecessary because the x-ray was "neither necessary nor pertinent to the evaluation and treatment of Mr. Bramberger's cardiology condition . . . ." Doc. 68-1 at 4.

a part of Plaintiff's amended complaint. Defendants subsequently filed the instant motions to dismiss and motions for summary judgment.

## II. Discussion

### A. Government's Motion to Dismiss Plaintiff's FTCA Claim

The government brings a Fed. R. Civ. P. 12(b)(1) motion to dismiss Plaintiff's FTCA claim. As explained below, the government challenges the Court's subject matter jurisdiction on grounds that a choice of law analysis reveals Plaintiff's noncompliance with the FTCA's statute of limitations.

### 1. Motion to Dismiss Standard

Generally, a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) *cert. denied*, 513 U.S. 868 (1994); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F.Supp. 2d 931, 934 (N.D. Ohio 2005). A facial attack challenges the sufficiency of the pleading itself, and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio 1997), and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Thus, whereas a facial attack requires the Court to accept Plaintiff's allegations as true, a

factual attack precludes any assumption of truthfulness and allows the Court to weigh the evidence.

The government's motion to dismiss requires consideration of evidence outside the complaint in order to determine the proper choice of law, and thus, the timeliness of Plaintiff's claim. The government's motion, therefore, presents a factual challenge to the Court's subject matter jurisdiction.

**2. Factors Determining Timeliness of Plaintiff's FTCA Claim**

"The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States 'in the same manner and to the same extent as a private individual under like circumstances.'" *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004) (quoting 28 U.S.C. § 2674). Among the limits on the FTCA's waiver of immunity is a statute of limitations that requires a plaintiff to first present an administrative claim within two years after the plaintiff's cause of action accrues. 28 U.S.C. § 2675(a) (administrative claim required prior to filing suit); 28 U.S.C. § 2401(b) (administrative claim must be brought within two years of accrual); *see also Chomic*, 377 F.3d at 610 (applying FTCA's statute of limitations).

In the instant matter, Plaintiff's administrative claim–which was filed in March 2011–ordinarily would not satisfy the two year limitations period. The FTCA contains a saving clause, however, for situations where, as here, the United States was substituted as a party defendant after initiation of the action:

> Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if--

6

> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
>
> (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5). The parties agree that Plaintiff's administrative claim was presented within sixty days after dismissal of the underlying action. The issue, therefore, is whether Plaintiff filed the underlying state court action within two years after the cause of action against the government accrued.

Federal law determines when a FTCA claim for negligence or medical malpractice accrues, *Chomic*, 377 F.3d at 610, and the Supreme Court has held that a claim accrues under the FTCA's statute of limitations when the plaintiff knows of both the existence and cause of his injury. *United States v. Kubrick*, 444 U.S. 111, 121-23 (1979); *Chomic*, 577 F.3d at 611-12. Importantly, while federal law dictates that a cause of action accrues when a plaintiff knows the existence and cause of injury, state law determines the nature of the underlying cause of action itself, which in turn impacts when the claim accrues. *Chomic*, 577 F.3d at 611. Specifically, and of relevance to the instant matter, state law that creates a *derivative* wrongful death action may lead to a different accrual date than state law that provides for an *independent* cause of action. This is so because under a derivative action (such as Michigan's), a plaintiff estate representative stands in the shoes of the decedent. MICH. COMP. LAWS § 600.2922; *Chomic*, 377 F.3d at 611 (quoting *Xu v. Gay*, 668 N.W.2d 166, 174 (Mich. Ct. App. 2003)). Conversely, under an independent action (such as Ohio's), a plaintiff does not stand in the decedent's shoes. *See* OHIO REV. CODE ANN. § 2125.02.

The Sixth Circuit analyzed the import of this very distinction in *Chomic v. United States*, 577 F.3d 607 (6th Cir. 2004). In *Chomic*, the court held that where state law provides a derivative,

rather than an independent, cause of action for wrongful death, and where the injury and its cause are known prior to death, the cause of action accrues on the date of injury and not at the later date of death. *Id*. at 610-11, 612. In other words, a derivative wrongful death action can accrue *before* death if the injury and cause are known prior to death. *Id*.

In the instant matter, Plaintiff filed the underlying state court action within two years of Plaintiff's death, but not within two years of when Mr. Bramberger learned of the existence and cause of his injury; i.e., when Mr. Bramberger was told of Dr. Disalle's recommendation for a CT scan. The parties therefore agree that if Ohio law controls, Plaintiff has an independent cause of action, and her FTCA claim is timely. Likewise, if Michigan law controls, Plaintiff has a derivative cause of action, and her FTCA claim is untimely. 28 U.S.C. § 2401(b).

**2. Michigan Law Applies & Plaintiff's FTCA Claim is Therefore Untimely**

The FTCA requires courts to apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 9 (1962). In so doing, courts must apply the state's entire law, including the state's choice of law principles. *Richards*, 369 U.S. at 10-11; *Vaugn v. United States*, No. 96-6336, 1997 U.S. App. LEXIS 35795, at *9 n.2 (6th Cir. Dec. 16, 1997).

The parties sharply disagree on whether Dr. Koehl's alleged negligence occurred in Michigan or Ohio. Plaintiff maintains that Dr. Koehl's negligence occurred in Ohio during his January 16, 2002 visit to Toledo Hospital when he "failed to inquire into or pursue the results of the x-ray he ordered." Doc. 74 at 5. Plaintiff supports this conclusion by citing to Dr. Koehl's deposition in which he stated that the x-ray results were missing from Mr. Bramberger's chart, that he cannot recall whether he inquired about the x-ray results at the hospital, that he would expect an

8

x-ray that was ordered two days prior to be completed, and that it is his practice to "pursue the results" of such tests. Koehl Dep. at 89:3-24, 90:7-10. Plaintiff contends that the x-ray results were in fact available to Dr. Koehl at the hospital, pointing to the radiology worker's statement that she phoned the results to the nurse's station on Mr. Bramberger's floor. Doc. 78 at 11:4-14:3. Further, Plaintiff highlights that Dr. Koehl stated that if had he seen the x-ray results at the hospital, he would have ordered a CT scan at that time. Koehl Dep. at 34:24-36:3, 89:3-19. Thus, Plaintiff asserts that Dr. Koehl's negligence occurred when he failed to follow-up on the x-ray results while at Toledo Hospital.

The United States counters that Plaintiff cannot establish negligence for failing to order a CT scan *in Ohio on January 16*, instead of sometime later. Noting that the x-ray results were absent from Mr. Bramberger's chart, the government argues that it is also unclear whether the x-ray results were available at the nurse's station on Mr. Bramberger's floor. Specifically, the radiology technician could only offer a supposition that she "probably" told the nurse during her telephone call that a CT scan was ordered, and that the nurse who received the call could neither confirm that the results were provided nor say what she would have done with the information. Given this, the government contends that any follow-up and any order for a CT scan would have occurred at the Medical Center in Michigan. As stated by Dr. Koehl in his declaration:

> If I had received a fax or any other form of the radiology report of the . . . x-ray taken at Toledo Hospital of Mr. Bramberger, before Mr. Bramberger was discharged, I would have telephoned from the Medical Center an order for Mr. Bramberger to have a CT scan. If I had received a fax or any other form of the radiology report of the . . . x-ray taken at Toledo Hospital . . . after his discharge, I would have called Mr. Bramberger from the Medical Center to advise him to get a CT scan.

Decl. Dr. Koehl, Doc. 59-2 at ¶8, (hereinafter, Koehl Decl.). This statement is consistent, the government argues, with the history of Dr. Koehl's treatment of Mr. Bramberger. Specifically,

9

with the exception of Dr. Koehl's January 16 visit to Toledo Hospital, all of Mr. Bramberger's treatment occurred at the Medical Center in Michigan, and the orders to admit Mr. Bramberger to Toledo Hospital and to have an x-ray taken were telephoned from the Medical Center in Michigan.

The Court finds that Plaintiff cannot establish that Dr. Koehl's negligence occurred in Ohio instead of Michigan. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (burden on Plaintiff to establish subject matter jurisdiction). Moreover, the resulting analysis of Michigan's choice of law principles directs application of Michigan law. *See Richards*, 369 U.S. at 10-11 (FTCA requires application of entire law of state where act or omission occurred, including choice of law principles). Alternatively, even if Plaintiff established that Dr. Koehl's negligence occurred in Ohio, Ohio's choice of law principles direct application of Michigan law. Plaintiff's FTCA claim is therefore untimely and this Court lacks subject matter jurisdiction.

With regard to the location of Dr. Koehl's negligence, Plaintiff's briefs do not dispute that Dr. Koehl did not see the x-ray results at the time of his January 16 visit. Moreover, Plaintiff cannot rebut Dr. Koehl's declaration that he would have telephoned a CT scan order from the Medical Center in Michigan at the point when he actually did see the x-ray results. Dr. Koehl's declaration is consistent with his past treatment of Mr. Bramberger in which Dr. Koehl telephoned admission and x-ray orders to Toledo Hospital from the Medical Center.

To the extent that Plaintiff contends Dr. Koehl made an omission in Ohio by failing to follow-up on the x-ray results *while at the hospital*, Plaintiff has failed to demonstrate that such an omission is an act of negligence under Ohio law. *See Delahite v. United States*, 346 U.S. 15, 73 (1953) ("FTCA requires a negligent act, some brand of misfeasance or nonfeasance."); 2 LESTER

10

S. JASON & HON. ROBERT C. LONGSTRETH, HANDLING FEDERAL TORT CLAIMS § 9.05[1], (2011) ("The basic precondition to liability under the Tort Claims Act is that the claimant establish a *negligent or wrongful* act or omission on the part of a government employee . . . . [I]f the Government owes no duty to the claimant under local law to act in conformity with a particular standard of care, liability may not be imposed. Similarly, there is no recovery if the claimant fails to show that the Government's conduct has fallen short of an applicable standard of care . . . .") (emphasis added) (footnotes omitted). Here, Plaintiff has introduced the affidavit of Dr. Lawrence A. Cooperstein, which states: "It is my opinion that the standard of care was breached by the Defendants since the recommended CT scan set forth in the January 14, 2002 report was not done until February 5, 2007 at which time lung cancer was diagnosed. The breach caused injury and death to the Plaintiff's decedent." Aff. Dr. Lawrence A. Cooperstein, Doc. 19 at ¶4, (hereinafter, "Cooperstein Aff."). Dr. Koehl did admit that it is his practice to "pursue the results" of tests, but Plaintiff has not established that the applicable standard of care in Ohio required Dr. Koehl to pursue the results *while he was at the hospital*, instead of at a later time. Thus, Plaintiff cannot rely on Dr. Koehl's failure to follow-up at the hospital in order to establish an Ohio-based act or omission within the meaning of the FTCA. *See Midwest Knitting Mill, Inc. v. United States*, 950 F.2d 1295, 1297, 1301 (7th Cir. 1991) (affirming 12(b)(1) dismissal of FTCA claim for failure to establish that act or omission complained of gives rise to liability under state law); HANDLING FEDERAL TORT CLAIMS, *supra*, § 9.01[1] ("[S]ince the requirement that the United States be liable under state law is part of the Government's waiver of sovereign immunity, the failure to allege or prove such liability is a jurisdictional defect."). In light of the above, the Court finds that Plaintiff

cannot establish that Dr. Koehl's act or omission occurred in Ohio. Instead, the Court finds that Dr. Koehl's act or omission occurred in Michigan.

Turning to an analysis of Michigan's choice of law principles, the Court finds that Michigan law controls. Michigan courts utilize an "interest analysis," which directs courts to apply Michigan law unless there is a "rational reason" to do otherwise. *Sutherland v. Kennington Truck Serv.*, 562 N.W.2d 466, 471 (Mich. 1997); *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 868 (Mich Ct. App. 1998). The analysis involves a two-step process whereby courts first determine whether a foreign state has an interest in having its law applied, and second, determine "whether Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland*, 562 N.W.2d at 471 (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 302, 304-05 (Mich. 1987)).

Initially it is noted that, Ohio does have an interest in having its law applied to a situation where an individual is receiving, and a doctor is administering and /or ordering, medical treatment in a hospital within the state's borders. Despite this, Michigan's interest is greater. As correctly argued by the government,[4] Plaintiff and Mr. Bamberger were Michigan residents at all times pertinent, the Medical Center was at all times incorporated in Michigan, and with the exception of a single admission to Toledo Hospital, Dr. Koehl's and Mr. Bramberger's treatment relationship was exclusively based in Michigan at the Medical Center. Indeed, except for Dr. Koehl's January 16 visit, the initiation and follow-up associated with Mr. Bramberger's admission occurred at the Medical Center via Dr. Koehl's phoning of admission and x-ray orders. Thus, Michigan choice of

---

[4] Plaintiff's response and sur-reply briefs offer no analysis of Michigan's choice of law principles.

12

law principles direct application of Michigan law, and Plaintiff's FTCA claim is therefore untimely.

Alternatively, even if Plaintiff could establish that Dr. Koehl's act or omission occurred in Ohio, Ohio's choice of law principles direct application of Michigan law. Ohio has adopted the principles established in the Restatement (Second) of Conflict of Laws:

> [A] presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider . . . (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation.[5]

*Morgan v. Brio Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145).

First, there is a rebuttable presumption that Michigan law applies since Michigan is the place of injury. Second, the remaining factors do not overcome this presumption because they do not demonstrate that Ohio has a more significant relationship to the claim. Specifically, Plaintiff and Mr. Bramberger were both residents of Michigan, the Medical Center was incorporated in Michigan, and Dr. Koehl's relationship with Mr. Bramberger was based in Michigan. Further,

---

[5] The Restatement (Second) instructs consideration of the following "Section 6 factors" if they are relevant: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of law to be applied." *See Morgan*, 474 N.E.2d at 289 n.6.

even assuming, *arguendo*, that Dr. Koehl was negligent by failing to inquire about the x-ray results at the hospital, Dr. Koehl was also negligent in Michigan by failing to follow-up from the Medical Center.

Plaintiff unpersuasively suggests that there is a presumption in favor of Ohio law, arguing that Mr. Bramberger's injury occurred in Ohio when Dr. Koehl failed to follow-up on the x-ray results and failed to order the CT scan. Contrary to Plaintiff's argument, Dr. Koehl's failure to follow-up and to order the CT scan relate to breach of a duty, not to injury. Moreover, Plaintiff's argument ignores the fact that the cancer progressed, and Mr. Bramberger died, in Michigan.

In summary, the Court finds that Dr. Koehl's act or omission occurred in Michigan, that Michigan's choice of law principles direct application of Michigan law, that Plaintiff's FTCA claim was untimely thereunder, and that this Court therefore lacks subject matter jurisdiction. Alternatively, even if Plaintiff could establish that Dr. Koehl's act or omission occurred in Ohio, the Court finds that Ohio's choice of law principles direct application of Michigan's law, again rendering Plaintiff's claim untimely.

**B. Remaining Defendants' Motions**

Defendants Toledo Hospital, NWOCC, and Dr. McClure move for dismissal of Plaintiff's amended complaint pursuant to FED. R. CIV. P. 12(b)(6). Alternatively, Defendants move for summary judgment pursuant to FED. R. CIV. P. 56. Defendants argue that Plaintiff's claims against them are barred by Michigan's six year statute of repose, and that Plaintiff failed to properly initiate her claims under the applicable Michigan statutes. Moreover, Defendants claim there are no genuine issues of material fact and that they are entitled to judgment as a matter of Michigan law.

Defendants predicate their motions on, and argue exclusively under, Michigan law. Yet, Defendants offer only a cursory analysis of why Michigan law controls. Piggy-backing on a presumption that this Court would apply Michigan law to the FTCA claims against the government, NWOCC and Dr. McClure assert that "[w]hile we have found no case directly on point concerning the propriety of applying the laws of multiple states to claims against multiple defendants in the same case, such an application of multiple states' laws in a single case is a practice that courts have generally preferred to avoid." Doc. 68-1 at 5. This argument is not well taken. First, whereas this Court is concerned with a choice between Michigan law and Ohio law, NWOCC and Dr. McClure's argument cites cases from outside the Sixth Circuit that were applying law from states other than Michigan or Ohio. Second, case law indicates that "Ohio law recognizes the doctrine of "depecage" which provides for the application of different states' laws to different claims." *Sirlouis v. Four Winds Int'l Corp*, No. 10-00469, 2012 U.S. Dist. LEXIS 43347, at *11-*12 n.2 (N.D. Ohio Mar. 29, 2012) (citing *Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d 840, 846 n.16 (N.D. Ohio 2009)). Similarly, "Michigan courts have not foreclosed the possibility of the doctrine of depecage . . . ." *Dow Chem. Co. v. Reinhard*, No. 07-12012, 2008 U.S. Dist. LEXIS 12358, at *32-*33 (E.D. Mich. Feb. 20, 2008) (citing *Olmstead*, 400 N.W.2d at 294 n.3 (declining to express opinion on propriety of depecage); *Bonelli v. Volkswagen of Am., Inc.*, 421 N.W.2d 213, 225 n.6 (Mich Ct. App. 1988) (applying New York law to a contract issue and Michigan law to a tort issue)). Thus, NWOCC and Dr. McClure's assertion that the Court cannot apply different states' laws to different claims is inapposite and does not support a conclusion that Michigan law controls.

15

Toledo Hospital's argument for applying Michigan law is also unpersuasive. Toledo Hospital argues that

> Plaintiff lives in Michigan, plaintiff's decedent lived and died in Michigan, and multiple defendants reside or are domiciled as a corporate entity in Michigan. While The Toledo Hospital is an Ohio corporation, and [NWOCC is] Ohio domiciled, the ongoing care of plaintiff's decedent was provided in Michigan. Finally, the decedent's estate was probated in a Michigan court . . . .

Doc. 73 at 3. Toledo Hospital does not explain how any of these considerations result in the application of Michigan law under Michigan's choice of law principles, or under those of Ohio. To the contrary, the Court finds that the choice of law principles of both states mandate application of Ohio law to the claims against Toledo Hospital, NWOCC, and Dr. McClure.

Under Ohio's choice of law principles, *see Morgan*, *supra*, 474 N.E.2d at 289, a presumption in favor of the law of the place of injury (Michigan) is overcome by the remaining choice of law factors. It is true, as Toledo Hospital argues, that Plaintiff is domiciled in Michigan, that Mr. Bramberger lived and died in Michigan, and that the Medical Center is incorporated in Michigan. Even so, Mr. Bramberger's relationship with Toledo Hospital, NWOCC, and Dr. McClure was unquestionably centered in Ohio. Moreover, while Mr. Bramberger's ongoing care occurred in Michigan, that care was provided by Dr. Koehl, not Toledo Hospital, NWOCC, or Dr. McClure. Indeed there is no evidence that these Defendants provided any care to Mr. Bramberger in Michigan. Dr. McClure's affidavit does state that, in addition to performing Dr. Koehl's requested cardiology consultation on January 14, 2002, Dr. McClure was "involved in Mr. Bramberger's cardiology care . . . from time to time thereafter, including during a subsequent hospitalization at The Toledo Hospital in June 2005 . . . ." Doc. 68-2 at ¶3. But Dr. McClure's reference to care provided "from time to time" after the 2002 hospitalization mentions nothing

16

about Michigan, yet specifically references care provided in Ohio. In any event, the center of the parties' relationship remained in Ohio, and a presumption in favor of Michigan law is therefore overcome.

Under Michigan's interest analysis, *see Sutherland*, *supra*, 562 N.W.2d at 471; *Hall*, *supra*, 582 N.W.2d at 868, it is clear that Ohio has an interest in having its laws applied. Moreover, the Court finds that Ohio's interest is greater than that of Michigan. Again, Mr. Bramberger traveled to Ohio to seek medical care from Toledo Hospital, Dr. McClure, and NWOCC, and these Defendants provided that care to Mr. Bramberger in Ohio. To the extent this lawsuit involves medical care provided to Mr. Bramberger in Michigan, that care was provided by another defendant who is subject to an entirely separate claim under the FTCA. As such, the Court finds that Ohio's interest in applying its laws to the claims *sub judice* outweighs that of Michigan.

In sum, whether analyzing the choice of law principles of Ohio or Michigan, both direct application of Ohio law. Therefore, because Toledo Hospital, NWOCC, and Dr. McClure premise their motions exclusively on the inapplicable law of Michigan, their motions must be denied.

**III. Conclusion**

For the reasons stated herein, the government's motion to dismiss is granted and its motion for summary judgment is denied as moot. (Doc. No. 59). Toledo Hospital, NWOCC, and Dr. McClure's motions to dismiss and motions for summary judgment are denied. ( Doc. Nos. 68 & 73).

IT IS SO ORDERED.

            S/ *David A. Katz*
            DAVID A. KATZ
            U. S. DISTRICT JUDGE